RUFUS WATERMAN, RECEIVER OF THE ROGER WILLIAMS FOUNDRY AND MACHINE COMPANY v. SAMUEL HUNT, JOHN J. STIMSON AND RANDOLPH CHANDLER.

The application of partnership property to the payment of partnership debts is the equity of the partners and not of the creditors, and therefore the partnership, while it is solvent, may sell its property or give its note secured by mortgage to one of the partners, and if the sale be made or the note and mortgage given in good faith and for valuable consideration, they will be valid against the claims of the partnership creditors, and although, if such note and mortgage be retained by the partner until the bankruptcy of the firm, he will not be allowed to enforce them against the company assets to the exclusion of the partnership creditors, because he is himself liable to these creditors, yet the assignee of such note and mortgage, who has received them in good faith and for valuable consideration during the solvency of the firm, holds them unaffected by the claims of the partnership creditors.

Where two notes, secured by mortgage, are assigned to different persons, as security for advances made to the mortgagee, one note separately from the mortgage and the other with the mortgage, both assignees are equally entitled to the benefit of the mortgage security to the extent of his debt ; and, if the proceeds of the sale under the mortgage will not satisfy the mortgage debt in full, yet the assignees are entitled to full payment for their advances if the proceeds are sufficient, and the assignor cannot come in for a dividend in said proceeds by virtue of any interest in said mortgage on account of the excess of said mortgage security over the advances made.

BILL IN EQUITY. By deed dated October 17th, 1848, Samuel L. Hunt, John Worsley, Benjamin Stevens, and Cornelius S. Tompkins, partners in the Roger Williams Foundry and Machine Company, mortgaged to Samuel Hunt certain company property, specifically named, to

secure the payment of two negotiable promissory notes for three thousand five hundred dollars each, of even date with the deed and payable in one and two years. On the 13th of February, 1849, said Samuel Hunt endorsed the note payable in one year after date to Randolph Chandler, as security for an advance to him of three thousand five hundred dollars. On the 24th of May, 1849, said Samuel Hunt transferred the other note and the mortgage to John J. Stimson, as security for endorsements upon the notes of said Hunt to the amount of three thousand dollars—which were afterwards paid by said Stimson. On the 21st of September, 1849, the company was dissolved by the Supreme Court and John J. Stimson and Rufus Waterman were appointed receivers, to take possession of the property of the company and dispose of the same, and wind up the concerns of the company for the benefit of the creditors. Under this decree, the said mortgaged property, with the consent of the parties, was sold with the company assets, and the proceeds, amounting to three thousand four hundred and fifty five dollars and nineteen cents were retained by said Stimson, receiver, to await the decision of the Court upon the claims of himself and the said Chandler. The bill prays a decree, ordering said mortgage to be delivered up and cancelled and the proceeds aforesaid to be paid into the common fund for distribution among the general creditors of the copartnership.

As the grounds of this decree, the bill states that the mortgage aforesaid, was executed November 2d, 1848, and, at that time, said Hunt was a partner in said company and liable for the debts thereof, which he assumed upon becoming a partner, and that the mortgage was ante-dated to secure to him a priority over the general partnership creditors; that, for some time previous to the

mortgage, said Hunt had been the agent and manager of the company, and, as such, contracted a great part of the debts; and that, as mortgagee of the shares of John Worsley and Samuel L. Hunt to their full value, and of the share of Cornelius S. Tompkins to a certain amount, and as the real owner of an interest standing in the name of Leonard Fuller, he had been actually interested in the business previous to the 2d of November and the execution of said mortgage; and that he had continued a co-partner, acquiring by purchase and foreclosure the interests of the said Samuel L. Hunt, Worsley and Stevens, until September 21st, 1849, when the company was dissolved. That during all this time the mortgaged property had been in the possession of the company; that the greater part of the partnership liabilities were debts, contracted prior to the 2d of November, 1848, and that the assets, including the property covered by the mortgage were insufficient for the payment thereof; that the transfer of said mortgage was not recorded until after the company was dissolved; and that said Chandler and Stimson received said notes and the mortgage, with full notice that said Hunt was a co-partner and the mortgaged property copartnership property, and could therefore claim no greater right than Hunt himself.

The defendants, in their several answers, deny that Hunt was a co-partner when the mortgage was made, and state that the company was at that time solvent, having a large surplus over their liabilities, and continued in good credit at the time of the transfer of the notes and mortgage to said Chandler and Stimson, and that said transfer was made in the regular course of business, in good faith, and for the considerations above stated.

The cause was heard upon bill, answer and proofs.

*Jenckes* and *Cozzens* for the plaintiff, contended, that Hunt, being a member of the co-partnership at the execution of the mortgage, the mortgage conveyed to him no more than the interests of the co-partners signing the same, subject to the prior claim of the co-partnership creditors; and that Stimson and Chandler, having received the notes and mortgage with notice that Hunt was a co-parter and the property co-partnership property, were sufficiently put upon inquiry to become affected by all the equities to which the notes and mortgage would be subject in the hands of Hunt. They cited *Anderson v. Maltby*, (2 Ves. 243,) *Ex parte Ruffin*, (6 Ves. 119,) *Ex parte Williams*, (11 Ves. 3,) *Ex parte Peake*, (1 Madd 196,) *Washburn v. Bank of Bellows Falls*, (19 Verm. 278,) *Black v. Bush*, (7 Munroe 210,) *Burtus v. Tisdall*, (4 Barbour 571,) *Morrison v. Blodgett*, (8 New Hamp. 238, 2 Story's Eq. Jur. § 1253, Story on Part. § 358 *Et. seq.*) *Coles v. Jones*, (2 Vern. 692,) *Davies v. Austen*, (1 Ves. 247,) *Scott v. Shreeve*, (12 Wheat. 608,) *Clute v. Robinson*, (2 Johns 595,) *Ellis and wife v. Messervie*, (11 Paige 467,) *Kettle v. Vandyke*, (1 Sanf. 76,) *Coddington v. Bay*, (20 Johns 639,) *Jenness v. Bean*, (10 New Hamp. 266,) *Stalker v. M'Donald*, (6 Hill 93.)

*Ames* for Stimson contended, that, if it were proved that Hunt was a partner when the mortgage was given,. yet a *bona fide* transfer of the partnership property was valid, so long as the firm was suffered to go on, except in case of admitted insolvency or stoppage of payment. *Ex parte Peake*, (1 Madd 191. Story on Part. § 353 Et. seq.) *Rice v. Barnard*, (20 Verm. 479.) This right of alienation may be exercised by mortgage as well as by sale *Matthews v. Walling*, (4 Ves. 118,) *Jones v. Gibbons*, (9 Ves. 210,) *Smith v. Lusher*, (5 Cowen 705.) The company could make a note to one of the partners, which

would be valid against the firm, and therefore against the creditors, who work out their equity to the partnership property through the firm. If the note, which is the principal, would be good, a *fortiori* would the mortgage be good. But the purchaser of a negotiable note, before due, is unaffected by the equities of the original parties; and even the assignee of a mortgage, who takes it with the consent of the mortgagor and without notice of equities, is unaffected by them. (3 Powel, p. p. 903 to 909,) *Reeves* v. *Scully*, (1 Walker 248.) Nor is the rule affected by the fact that the note and mortgage were taken as collateral security, the only cases where a note so taken, is subject to prior equities, being where it is taken as security for a pre-existing debt. (1 Am. Lead Cases p. 336.) *Palmer* v. *Richards*, (1 Eng. Law and Eq. 529.) But even if Stimson and Chandler stood in the same position as Hunt, they would be entitled to their security. *James* v. *Mowry*, 2 Cowen 297.) *Murray* v. *Lylburn*, (2 Johns. 441.) *Livingston* v. *Dean*, (Ibid 479.) *Hoxie* v. *Carr*, (1 Sumner 173.) The fact that the property remained with the mortgagors does not affect their right—the mortgage being recorded. (1 Powel 40–41–44.) *Hubbard* v. *Bradley*, (1 Sim. 326.) *Thompson* v. *Pettitt*, (10 Ad. & Ellis N. S. 101.) To show that Chandler and Stimson were both equally entitled to the mortgage security, he cited *Stevenson and Woodruff* v. *Black*, (1 New Jersey 338. 1 White & Tudor 232. 2 Am. Lead. Cases 150–163.)

*Carpenter* for Chandler.

GREENE, C. J., delivered the opinion of the Court. While a co-partnership is solvent and going on, the creditors, strictly speaking, have no equity against the assets

Waterman *v.* Hunt & others.

of the partnership. Hence the company may sell any portion of the joint property to one of the partners, and, if such sale be in good faith and for a valuable consideration, it will be valid against any claim by the partnership creditors. And, even in case of a dissolution of the company where such dissolution is voluntary, the partners may agree that the joint property of the firm shall belong to one of them, and, if such agreement be *bona fide* and for a valuable consideration, it will transfer the whole property to such partner, free from the claims of the company creditors. Story on Part. § 358 and the cases there cited.

This results from the rule, that the application of the company property to pay company debts is the equity of the partners and not of the creditors, and, if waived by the partners in good faith, the creditors are bound.

So the firm may, in good faith and for a valuable consideration, give a note to one of the partners and the endorsee of such note may enforce it at law against the company. *Smith* v. *Lusher,* (5 Cowen 688.) *Burney et al.* v. *Lyman,* (1 Story 423.) It is valid and can be enforced in equity against the partner, the original promisee.

If the firm can make a valid note to one of the partners, they may make a valid mortgage to secure its payment.

In this view of the law, it is immaterial whether Hunt was a partner or not, at the time he received the notes and and mortgage in question. They were given in good faith and for a valuable consideration, and so far from any view to the bankruptcy of the company, that, at the time they were given, Hunt agreed to become partner in the firm and to assume the debts and did assume them.

But if Hunt had retained the notes and mortgage until the company had gone into bankruptcy, he could not be permitted to enforce them against the assets of the com-

pany, to the exclusion of the company creditors, or *pari passu* with them. Being himself liable to these creditors he could make no claim until they were paid.

Instead of retaining the notes and mortgage, Hunt sold and endorsed one of the notes to Mr. Chandler in February, 1849, for cash, and, in May following, assigned the mortgage and endorsed the other note to Mr. Stimson, as collateral security for his endorsement of the notes of Hunt to the amount of three thousand dollars.

At the time of these transactions and for several months afterwards, the company continued to carry on their usual business. We think the loan of money by Mr. Chandler and of credit by Mr. Stimson was made in good faith on the part of these gentlemen. We think Mr. Hunt also acted in good faith in the matter, and, so far from having any view at the time to the insolvency of the company, his object was to strengthen their credit and enable them to go on with their business.

Mr. Chandler, when he received the note, did not take any assignment of the mortgage, but he is equally entitled to the benefit of the mortgage security to the extent of his debt. Mr. Stimson's endorsement was to the amount of three thousand dollars, which he has since paid. The plaintiff contends he is entitled to a dividend, out of the proceeds of the mortgage, on this account only, and the remaining five hundred dollars are to be considered as belonging to Hunt, and so not to be paid out of the proceeds of the mortgage. In our opinion Stimson as holder of the note is entitled to a dividend on the whole amount thereof, until he is paid the full sum due him.

Bill dismissed with costs to the respondents, costs to be a charge on the general fund.